IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 15 |
| ) | |
| NORTEL NETWORKS UK LIMITED, *et al.* ) | Case No. 09-11972(KG) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | **Re Dkt No. 137** |

## MEMORANDUM OPINION

In this Chapter 15 proceeding, the Joint Administrators for Nortel Networks UK Limited ("NNUK") and affiliates[1] (collectively, the "EMEA Debtors") are seeking relief from being added as a third party to litigation pending before the Court. The EMEA Debtors have moved (D.I. 137) (the "Motion") pursuant to sections 105(a), 1520(a) and 1521(a) of the Bankruptcy Code to (1) enforce the automatic stay to efforts by Nortel Networks, Inc. and affiliated entities (the "U.S. Debtors") to implead the EMEA Debtors as third-party defendants in an adversary proceeding discussed below (the "Adversary Proceeding"), and (2) enjoin NNI and SNMP Research, Inc. and SNMP Research International, Inc. (collectively, "SNMP Research") from prosecuting direct or contribution claims in any court other than the English Court where the EMEA administration is pending.

---

[1] The Debtors in these cases are: Nortel Networks UK Limited; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks (Ireland) Limited; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania, S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks OY; Nortel Networks Polska Sp. z. o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.A. ("NNSA"); Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks, s.r.o.

## FACTS

### Background Facts

The U.S. Debtors other than NN CALA filed for bankruptcy on January 14, 2009 (the "Petition Date").[2] On that same date the U.S. Debtors' Canadian affiliates filed for relief in Canada under the Companies' Creditors Arrangement Act, seeking relief from creditors.

On June 8, 2009, the Joint Administrators of NNUK petitioned for recognition of the NNUK proceeding pursuant to Chapter 15 of the Bankruptcy Code (D.I. 2), and on June 26, 2009, the Court entered its Order Granting Recognition and Relief in Aid of Foreign Main Proceeding, recognizing the NNUK proceeding as a foreign main proceeding under Chapter 15. D.I. 36. Later, on January 31, 2011, the Court entered an Order recognizing the insolvency proceedings of the remaining EMEA Debtors as foreign main proceedings under Chapter 15. D.I. 116. By Order, entered October 21, 2010, the Court approved the joint administration of the 15 cases filed by the EMEA Debtors. D.I. 53.

The U.S. Debtors, the Canadian Debtors and the EMEA Debtors engaged in asset sales (the "Business Line Sales") between March 2009 and March 2011. The sales, which related to Nortel business lines, generated over $3 billion.

In the Business Line Sales which the Court and the Canadian Court oversaw and approved[3], the sales excluded the transfer of the SNMP Research licenses. The Orders

---

[2] NN CALA later filed for bankruptcy relief.

[3] D.I. 539, D.I. 1205, D.I. 1514, D.I. 1760, D.I. 2065, D.I. 2070, D.I. 2632 and D.I. 4054.

2

approving the Business Line Sales also provided that the Court retained "exclusive jurisdiction" over enforcement and interpretation of the Business Line Sales Orders.

Thereafter, in a 21-day joint trial, the Canadian Court and the Court jointly presided over a dispute among the U.S. Debtors, the Canadian Debtors and the EMEA Debtors over the allocation of the proceeds from the Business Line Sales and the sale of residual patents.  On May 12, 2015, the Court and the Canadian Court issued Opinions (D.I. 15544) and the Court entered an entered an Order (D.I. 15545) setting forth a modified pro rata allocation approach, later modified (D.I. 15830) and now on appeal. The proceeds from the Business Lines Sales and the residual patent sales, totaling $7.3 billion, remain in escrow.

### The U.S. Debtors – EMEA Debtors Settlement

In December 2013, the U.S. Debtors and the EMEA Debtors entered into a settlement agreement (the "Settlement Agreement") (D.I. 12618-3) resolving claims the EMEA Debtors had filed against the U.S. Debtors. In exchange for $37.5 million paid promptly by the U.S. Debtors, the EMEA Debtors withdrew their claims.  The Settlement Agreement contains a release of the EMEA Debtors which provides in relevant part:

> 4.    RELEASES
>
> 4.1    Nothing in this Settlement Agreement . . . shall constitute a release or waiver or discharge (in whole or in part) of . . . (iv) any right of any Party to assert or defend against any allocation position or advance or defend against any arguments as to entitlement to Sale Proceeds in the Allocation Dispute; (v) any claim, right or entitlement of any Party to Sale Proceeds in the Allocation Dispute; . . .
>
> 4.6.    US Interests: Subject to Sections 4.1 and 4.2, on the Effective Date, and without the need for additional documentation or the entry of any

3

> additional orders, the US Interests, and (to the extent under the control of the US Entities) their respective current and former affiliates, subsidiaries, employees, officers, directors, agents, advisors, attorneys, representatives, successors and assigns of the foregoing release and forever discharge the EMEA Debtors,. . . from any and all liability for claims, defenses, demands, liabilities, obligations, damages, actions, contribution, subrogation, causes of action, setoffs, recoupments, costs and expenses. . . the foregoing terms to be construed as broadly as possible and to include the definition of "claim" provided in Section 101(5) of the Bankruptcy Code, whether known or unknown, past or present, fixed or contingent, liquidated or unliquidated, which the US Interests now have, had, may have had or hereafter may have however so arising . . . .

### The Adversary Proceeding

The Adversary Proceeding (Case No. 11-53454) arises from SNMP Research licensing its software to U.S. Debtors for use in a number of their products. The license agreement is dated December 23, 1999 (the "License Agreement"). In the bankruptcy cases, SNMP Research filed proofs of claim against the U.S. Debtors and the Canadian Debtors for royalty payments. SNMP Research later amended its proofs of claim to include damages for the unauthorized use of SNMP Research software.

On November 2, 2011, SNMP Research filed its Complaint (Adv. D.I. 1) in the Adversary Proceeding claiming that the U.S. Debtors and the Canadian Debtors were liable for copyright infringement, violations of Delaware trade secrets law, breach of contract and for improper transfer of SNMP Research software to buyers through the Business Line Sales. The Complaint also alleged that certain buyers, including Avaya, Inc. ("Avaya") unlawfully used and distributed SNMP Research software. Notably, the Complaint did not name the EMEA Debtors. SNMP Research filed an Amended Complaint (Adv. D.I. 115) on December 27, 2013, removing certain buyers as defendants.

Matters then turned to the Canadian Court where SNMP Research had filed a lift stay motion to enable it to prosecute its claims against the Canadian Debtors before the Court. The Canadian Court denied the lift stay motion on March 4, 2015, on grounds which the Court will discuss later, except to note that the denial of the motion was based on SNMP Research not meeting its burden of "demonstrating sufficient reason to displace [the Canadian] Court's jurisdiction to keep all of the SNMP Research claims against the Canadian Debtors within a single proceeding." Canadian Court Opinion, ¶ 36.

SNMP Research thereupon filed a Second Amended Complaint (Adv. D.I. 160) on March 24, 2015, in which it dismissed its claims against the Canadian Debtors and named only the U.S. Debtors and Avaya as defendants. The Second Amended Complaint includes claims for copyright infringement, misappropriation of trade secrets, breach of contract, fraudulent misrepresentation, unjust enrichment, conversion and an administrative expense claim against the U.S. Debtors.

In response to a motion by SNMP Research, the Court issued an Opinion and Order (Adv. D.I. 209 and 210) determining that the Court lacks authority to enter final judgments or orders regarding SNMP Research's claims against Avaya which are non-core claims. SNMP Research's motion to withdraw the reference was recently argued before the District Court and on September 9, 2015, the District Court denied the motion, meaning the case remains before the Court for now, both as to SNMP Research's claims against Avaya and the U.S. Debtors.

Finally, the Court takes notice that the Joint Administrators have already accomplished much in the English Proceeding. They have substantially completed an informal claim process and the English Court issued an order authorizing them to commence a formal proof of claim process with a bar date of October 31, 2015. The English Court has also authorized the Joint Administrators of the other EMEA Debtors to prepare what is similar to a Chapter 11 plan.

## **DISCUSSION**

The EMEA Debtors' Motion which is the subject of this ruling was precipitated by the filing by the U.S. Debtors of a motion to implead the EMEA Debtors in the Adversary Proceeding (the "Impleader Motion"). The U.S. Debtors seek leave to file a third-party complaint against the EMEA Debtors. In the Impleader Motion, the U.S. Debtors claim that if the Court determines that SNMP Research is entitled to damages for or relating to a portion of the Business Line Sale proceeds, then the U.S. Debtors will be entitled to a judgment for contribution against the EMEA Debtors. The Impleader Motion is scheduled to be heard on September 22, 2015.

It is the Court's view that the U.S. Debtors' case against the EMEA Debtors – if there is a case at all – is post-Petition and if the Court grants the Impleader Motion it should be heard in this Court. The EMEA Debtors were parties to the Business Line Sales and the Court retained exclusive jurisdiction to "enforce the terms and provisions of, and to resolve any and all disputes." There are problems with the U.S. Debtors' contribution claim. In addition to the yet to be resolved defenses to the Impleader Motion, there is the EMEA Debtors' substantial defense of the Settlement Agreement and its release of the

6

EMEA Debtors, but the Court will need to hear more on the release at a more appropriate time, which this is not. As the Court will discuss, however, the Settlement Agreement is germane to the present dispute. The Court will now turn to the parties' arguments.

1. Violation of the Automatic Stay.

The EMEA Debtors argue that when the Court recognized the EMEA Proceedings as foreign main proceedings pursuant to Section 1517(b)(1) of the Bankruptcy Code, they were protected by the automatic stay pursuant to Sections 362 and 1520(a)(1) of the Bankruptcy Code. *See*, e.g., *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 336 (Bankr. D. Del. 2010). The EMEA Debtors concern is that adding them to the Adversary Proceeding will force them to litigate pre-Petition claims. This is because the allegations against the U.S. Debtors are based on a continuous course of conduct that began pre-Petition. The EMEA Debtors cite to the opinion of the Canadian Court denying SNMP Research's lift-stay motion there, in which the Canadian Court held that:

> It is quite evident that there is overlap between these claims. Indeed the issues are the same except as to the timing of the alleged unauthorized use of [SNMP] software, one claim being for pre-filing unauthorized use and the other being for post-filing unauthorized use.

Canadian Court Ruling, paragraph 34.

The Adversary Proceeding relates solely to the Business Line Sales which occurred post-Petition and, therefore, claims to which the automatic stay of Sections 362 and 1520(a)(1) do not apply. It is equally clear that the automatic stay does, indeed, apply to the pre-Petition claims that SNMP Research filed against the U.S. Debtors. The EMEA Debtors are entitled to a stay of pre-Petition claims by either SNMP Research or the U.S.

Debtors.  Any party seeking pre-Petition claims against the EMEA Debtors will have to file claims in the English Court.  But that is not the case here. Instead, the U.S. Debtors are seeking contribution from the EMEA Debtors for a portion of the proceeds from the Business Line Sales that accrued to the EMEA Debtors.  Since the EMEA Debtors participated in the Business Line Sales, benefited from them and the Court retained "exclusive jurisdiction to interpret, construe, implement, and enforce the terms and provisions of, and to resolve any and all disputes that may arise under or in connection with" the Business Line Sales, it seems only fair and just that the automatic stay does not apply to the U.S. Debtors' contribution claims.

The "fix" for the problem that the EMEA Debtors raise, namely, that they will be subjected to claims in the Adversary Proceeding for pre-Petition claims is fair and simple – the automatic stay applies to pre-Petition claims and the Court so holds.  Neither SNMP Research nor the U.S. Debtors will be entitled to seek relief from the EMEA Debtors for claims other than the U.S. Debtors claim for contribution (subject to the Court's ruling on the Impleader Motion).  It is perfectly clear to the Court that the English Court is the appropriate "clearinghouse" for pre-Petition claims against the EMEA Debtors.

    2. <u>The English Law Moratorium.</u>

The EMEA Debtors next argue that the insolvency law of the United Kingdom includes a statutory moratorium against individual creditor actions applicable to both pre- and post-Petition claims, citing *In re Manning*, 236 B.R. 14, n.6 (9th Cir. B.A.P. 1999). The EMEA Debtors argue that just as the Canadian Court found that SNMP Research should not be allowed to bring its claims against the Canadian Debtors before the Court,

8

similarly, the Court should not compel the EMEA Debtors to defend claims outside of the English Court.

The EMEA Debtors also invoke Section 1521(a) of the Bankruptcy Code which provides that:

> (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including
>
> > (1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);
> >
> > (2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a)
>
> * * *

Section 1521(e) provides that the "standards, procedures, and limitations applicable to an injunction shall apply to relief under paragraphs (1), (2), (3), and (6) of subsection (a)". The standards for injunctive relief in the Third Circuit expressed in *United States v. Bell*, 414 F.3d 474, 478 n.2 (3d Cir. 2005) are: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest."

The movants, the EMEA Debtors, have shown they have a reasonable likelihood of success on the merits. The Settlement Agreement and its release of the EMEA Debtors

9

will prove to be a difficult hurdle for the U.S. Debtors to overcome. The Court reserves judgment on the release but the plain language in the Settlement Agreement would, it seems, establish the EMEA Debtors' defense to the Adversary Proceeding.

The next two factors evaluated by courts in the Third Circuit, irreparable harm to the EMEA Debtors were its motion not granted, and even greater harm to the U.S. Debtors if it is, weigh in favor of the U.S. Debtors. The Court believes that the irreparable harm to the EMEA Debtors stems from the possibility that SNMP Research and the U.S. Debtors will assert pre-Petition claims. Because that cannot happen, and because of the EMEA Debtors involvement in the Business Line Sales, there is little likelihood of irreparable harm to the EMEA Debtors. On the other hand, were the Court to exercise its discretion in favor of the EMEA Debtors, the U.S. Debtors would suffer greater harm in bearing the entire burden of SNMP Research's potential recovery from the Business Line Sales. Assuming that the release of the EMEA Debtors is not an impediment to the Impleader Motion, which the Court will assume for purposes of the Motion, the U.S. Debtors would not have any claim for contribution from the EMEA Debtors thereby imposing greater harm on the U.S. Debtors were the Court to grant the Motion pursuant to Section 1521(a) of the Bankruptcy Code.

Last is whether granting the EMEA Debtors the relief they request is in the public interest. The Court is satisfied that it is not. What is in the public interest is that the U.S. Debtors remain entitled for the moment to bring the Impleader Motion to recover from the EMEA Debtors for post-Petition contribution. Therefore, the Court will not grant the EMEA Debtors relief pursuant to the Bankruptcy Code.

3. <u>Dismissal of The Third Party Complaint</u>

The EMEA Debtors final argument is that the dispute is for naught because if they lose the Motion, and if the U.S. Debtors are successful on the Impleader Motion, the release they received in the Settlement Agreement will result in their dismissal from the proceeding.  The EMEA Debtors also claim that the Court lacks jurisdiction over them. These arguments are premature and the Court, with limited remarks, will not make findings as to either argument.  On jurisdiction, the Court observes that the EMEA Debtors were part and parcel of the Business Line Sales and the Court reserved "exclusive jurisdiction" over disputes relating to the sales.  On the release, the Court understands the EMEA Debtors' argument that in the Settlement Agreement the U.S. Debtors granted a complete release except for the allocation dispute.  The final outcome of these and other issues remain for decision when they arise.

## CONCLUSION

For the foregoing reasons, the Motion is denied, except the Court will grant injunctive relief to the EMEA Debtors against the bringing of pre-Petition claims outside of the English Court.  The Court will issue an appropriate Order.

Dated: September 15, 2015

_____
KEVIN GROSS, U.S.B.J.